### BROWN *et al. v.* HAWKINS, tax-collector, *et al.*

1. A motion to dismiss a bill of exceptions upon the ground that one not a necessary party is not made a party defendant in error is without merit.

2. The adoption of a resolution by a county board of education, that the territory embraced in each militia district in the county shall constitute a separate school district, is not, without more, a substantial compliance with the positive requirements of the statute in relation to the laying off and marking out of the county into school districts by the county board of education; and a school district sought to be established merely by such a resolution is not a lawful district, and an election within such territory for the determination of the question of imposing a local tax therein for the support of public schools is illegal. The collection of a tax levied in pursuance of the election should be enjoined upon due and proper application by citizens and taxpayers of the territory.

APRIL 17, 1913.

Petition for injunction. Before Judge J. B. Park. Baldwin superior court. December 2, 1912.

*Allen & Pottle* and *Sibley & Sibley,* for plaintiffs.

*Hines & Vinson,* for defendants.

FISH, C. J. R. R. Brown and several others brought their equitable petition against K. P. Hawkins as tax-collector, N. H. Bullard as county school commissioner, and G. C. McKinley, chairman, and two others, as county commissioners, all of Baldwin county, for the purpose of enjoining the levy and collection of a local tax for public schools in what is known as the 319th school district of such county, in accordance with the result of an election held in that district on August 27, 1912, the result of which had been declared in favor of local taxation. The petitioners alleged themselves to be citizens and taxpayers of said district; and that the election held to determine whether the tax should be levied in the district was illegal and void, for several reasons set forth, among them being that the county board of education of Baldwin county had never laid the county off into school districts and made and filed a map of such districts with the ordinary, as the statute requires. The judge, upon consideration of the pleadings and the evidence submitted, refused to grant an interlocutory injunction, and the petitioners excepted. So much of the evidence as relates to the controlling point of the case is in substance as follows: Many years ago seven militia districts were created in the county of Baldwin, and prior to the passage of the act of 1905, providing for local tax for district schools, commonly known as the McMichael act, and when that county constituted a school district, the militia districts were considered and treated by the school authorities of the county as sub-school districts. After the passage of that act, and in the fall or winter of 1905, the county board of education fully discussed the subject of laying off the county into school districts, and the county school commissioner, who was the secretary of the board of education "suggested that there could be no better division of the county into school districts than a division to conform to the militia districts; and his suggestion was adopted, and the county so divided." In other words, the county board of education at that time adopted a verbal resolution making the territory included within the boundaries of each militia district a separate school district. This resolution was never entered upon the minutes

of the board, but nearly six years thereafter, on June 6, 1911, by order of the president of the board (it not appearing that the board had taken any further action on the matter) its secretary made the following entry on the minutes: "That whereas motion for redistricting county adopting militia districts as school districts does not appear on the minutes at the time when motion was passed, this motion be entered upon the minutes of this date." The militia district lines have not since been changed. The county board of education has never done anything more towards laying off the county into school districts, defining the lines thereof by boundaries or by marking out, or in any other way indicating the area and boundaries of the school districts of the county. The 319th militia district is irregular in shape, and is about seven miles in length from north to south and about 12 miles in width from east to west. No map of the county laid off into school districts, or in any way indicating or referring to the school districts or either of them, has ever been filed with the ordinary, nor has such map ever been made by the county board of education, or by any one else for the board. There is now, however, and has been for several years past, a map of the county in each of the offices of the ordinary, clerk, and county commissioners, "showing very fully most of the residences, roads, churches, schools, gins, and dwelling-houses in said county, outside of Milledgeville, and showing the militia districts therein, and said map is very complete, and a fairly accurate map of the county; . . it was furnished to the county by the county authorities," and was made by the county surveyor, who was a member of the county board of education. As already stated no reference is made on these maps to any school district.

1. A motion was made in this court by the defendants in error to dismiss the bill of exceptions, on several grounds, all of which, except one, was met by the allowance of an amendment offered by plaintiffs in error. The ground not covered by the amendment is that G. C. McKinley, who was a party defendant in the case below, is not made a party defendant in error in the bill of exceptions. McKinley, as chairman of the board of county commissioners, filed an answer to the petition, in which it was alleged that the commissioners of roads and revenue of the county had, prior to the institution of petitioners' case, levied the tax at a given rate on

the property in the district in which the petitioners resided and owned property, and that the board of commissioners did not contemplate or intend to do anything further towards the collection of the taxes so levied. On the hearing this answer was in nowise controverted. It follows that McKinley had no further interest in the result of the case, and he was therefore not a necessary party defendant in error. The motion to dismiss is overruled.

2. The act of August 23, 1905 (Acts 1905, p. 425), as amended by the act of August 21, 1906 (Acts 1906, p. 61), codified in the Civil Code, §. 1531 et seq., declares: "As soon as practicable, it shall be the duty of the county board of education of each county in Georgia to lay off the county into school districts, the lines of which shall be clearly and positively defined by boundaries, such as creeks, public roads, land lots, district lines, or county lines. The school districts thus marked out shall contain an area of not less than sixteen square miles, and, where practicable, shall be so shaped as to have the school buildings as near the center as possible, and no territory shall be included whose occupants reside farther than three miles from the school house, without written petition of two thirds of the qualified voters therein: Provided, that the board of education may have the right to establish districts with areas less than sixteen square miles where there are natural causes or local conditions that make it necessary to do so. The natural causes which will permit the creation of smaller districts are mountains, streams over which there are no bridges, and dangerous roads. Local conditions which will permit the creation of small districts must be determined by the board of education. . . A map of the county thus laid off, plainly outlining the boundaries of the school districts with full description thereof, shall be filed with the ordinary," etc. There is no authority of law for a board of education of a county to disregard these positive requirements of the statute. *Lansdell* v. *King,* 134 *Ga.* 536 (68 S. E. 102). The adoption of the resolution by the county board of education of Baldwin county, creating a separate school district of the territory embraced in each of the seven militia districts of the county, without more, was neither a literal nor a substantial compliance with the statute requiring the board to lay off and mark out the county into school districts, the lines of which shall be clearly and positively defined by boundaries, and to file with the ordinary a map of the

county thus laid off, plainly outlining the boundaries of the school districts with full description thereof. The mere statement of the positive requirements and the action of the county board of education, as shown by the evidence in the foregoing statement of facts, clearly demonstrates that the district known as the 319th school district of Baldwin county has never been legally laid off and marked out, and is therefore not a lawful school district, and that the election held therein on August 27, 1912, for the determination of the question of imposing a local tax therein for the support of public schools, was illegal, and that accordingly the judge erred in refusing to grant an interlocutory injunction restraining the collection of such a tax. The ruling here made is not in conflict with that in *Mabry* v. *Fuller,* 133 *Ga.* 831 (67 S. E. 91), relied on by counsel for defendants in error. In that case it appeared that the county board of education, during its meetings, laid off the county into school districts, by marking out the school districts on a map of the county in the office of the county school commissioner, showing boundaries of each district, and that the boundaries of the particular district there in question were clearly and positively defined and laid off on such map, and that the board agreed to such boundaries and established the district accordingly. Nor is the decision in *Dobbs* v. *Hardin,* 137 *Ga.* 191 (73 S. E. 582), cited by counsel for defendants in error, in conflict with our ruling in the case at bar. In that case it was held, "that while the board of education of each county should lay it off into school districts, making a map thereof showing the lines and boundaries as laid off, and file the map with the ordinary, as the statute requires, yet we can not hold that under the facts above stated, and the long delay on the part of the plaintiffs in applying for an injunction to restrain the collection of the tax, the judge was not warranted in denying an interlocutory injunction against the collection of the tax for the year 1910." The facts set forth in the decision in that case clearly differentiate it from the present case.

*Judgment reversed. All the Justices concur.*